*W. T. JOHNSON et als v. JOSEPH P. PRAIRIE.

*Conveyance of Land—Held Adversely—Statute of Limitations.*

1. It was a rule of the common law, which is in force in this State, that a conveyance of land, held adversely to the grantor, was void, as to the person so holding adverse possession and those claiming under him, but was valid and passes the title as to all the rest of the world.

2. This is altered by The Code, §177, to the extent of allowing the grantee to sue in his own name, provided he, or any grantor or any other person through whom he may derive title, might maintain such action, notwithstanding such conveyance was void, by reason of such actual adverse possession, when it was made.

*MERRIMON, J., having been of counsel did not sit on the hearing of this case.

3. A person, holding possession of land for himself, in 1858, executed a mortgage, and, in 1859, assigned his equity of redemption to the mortgagee, but continued in possession ; and the mortgagee sold and conveyed the land, in 1872, to a third party, who entered and held possession until 1878, when this suit was commenced ; *Held*, 1st, That the mortgagor became tenant at sufferance of the mortgagee, and his possession was the possession of the mortgagor and his grantee ; 2nd, That, the defendant and those under whom he claims having had actual adverse possession, under known and visible metes and bounds of the land in controversy, with color of title, the action would have been barred, if it had been brought by the plaintiff's grantor, or his heirs, and therefore this action, which was brought by the heirs of the grantee, was barred.

(*Williams* v. *Bennett*, 4 Ired., 122, cited and approved).

CIVIL ACTION for the recovery of land, in nature of ejectment, tried before *Clark, Judge*, and a jury, 'at August Civil Term, 1885, of WAKE Superior Court.

The plaintiffs alleged that they were the owners in fee of the tract of land described in the complaint, as the heirs of Sarah Johnson, who died seized in fee of the same, and that the defendant is in possession thereof, and wrongfully withholds the same.

The defendant denied the title of Sarah Johnson and the plaintiffs, and that he wrongfully withheld the possession from the plaintiffs, and as to the plaintiffs being the heirs of Sarah Johnson, he had not sufficient knowledge or information upon which to form a belief.

The following issues were submitted to the jury:

"I. Are the plaintiffs the owners in fee of the land mentioned in the complaint?

"II. What damages have the plaintiffs sustained by reason of the defendant's occupation and use of said land."

Plaintiffs introduced a deed for a large tract of land, of which the land in controversy forms a part, from Alfred Lane to Moses Mordecai, of date of March 30th, 1822, and followed this by the will of Moses Mordecai, (probated November, 1824), in which the Lane lands were devised to Henry Mordecai.

Plaintiffs then offered in evidence, a deed from Henry Mordecai to Henry W. Miller, trustee for Mrs. Sarah A. Johnson,

dated December 23rd, 1855.   This deed conveyed the whole of the Lane land, including the land in controversy.   Said deed is as follows:

"This indenture, made and entered into this 23d day of December, A. D. 1855, by and between Henry Mordecai, of the county of Wake, State of North Carolina, of the one part, and Henry W. Miller, as trustee of Mrs. Sarah Johnson, wife of Wiley W. Johnson, of the same county and State, of the other part, witnesseth: That the said Henry Mordecai, for and in consideration of $2,990, to him in hand paid by the said Henry W. Miller, as trustee aforesaid, the receipt whereof is hereby acknowledged, hath given, granted, bargained and sold, conveyed and confirmed, unto the said Henry W. Miller, trustee as aforesaid, his heirs and assigns, the following tract or parcel of land, situate in the county and State aforesaid, on the south side of Crabtree Creek, adjoining the lands of William Boylan, and others, bounded as follows:

"Beginning at a stake, near a hickory, on the Tarboro road, J. J. Rial's corner, thence North 7 degrees West, 111 poles, to pointers on a branch, thence down the various courses of said branch to Crabtree Creek, thence down the various courses of said creek, to a hickory and ash, William Boylan's corner, thence with his line, South 66 degrees West, 189½ poles to a stake, his corner, thence South 29 degrees, East 108½ poles to the said Tarboro road, thence Northwest along the said road to the beginning, said to contain 409½ acres.   To have and to hold, the aforesaid tract or parcel of land, with all and singular its appurtenances, to the said Henry W. Miller, his heirs and assigns forever, in trust to hold the same, for the sole and separate use of the said Sarah Johnson, wife of the said Wiley Johnson, her heirs and assigns, free and clear from the claims, debts or demands of the said Wiley W. Johnson, or his heirs, and in further trust to convey the same, or any part thereof, to such person or persons, and at such times as she, the said Sarah A. Johnson, may, by writing, under her hand and seal, and attested by two witnesses, direct, either with or without the consent of her said husband.   And

the said Henry Mordecai, doth for himself and his heirs, covenant and agree to warrant and defend the title of the said tract of land to the said Henry W. Miller, trustee as aforesaid, his heirs and assigns, to and for the trusts, uses and purposes hereinbefore set forth, and no other. In witness whereof, the said Henry Mordecai doth hereto set his hand and seal, the day and year above written.

HENRY MORDECAI, [Seal.]

Signed, sealed and delivered in presence of William T. Shaw."

This execution of this deed was duly proved, and it was registered on the 3d day of April, 1878.

The defendant put in evidence:

1. Request of Wiley and Sarah A. Johnson, in writing, to Henry W. Miller, trustee, to convey to George Taylor a portion of the land, 325 acres, dated December 25th, 1865, duly witnessed and registered.

2. A deed from H. W. Miller, trustee, to George Taylor, for the 325 acres, Dated December 24, 1855.

Plaintiff objected to said deed, because it was executed without Sarah A. Johnson having requested the same to be done. Objection overruled, and exception.

Defendant offered a deed from H. W. Miller, trustee, and Sarah A. Johnson, to George Taylor, dated 11th May, 1857, for 73 acres. This deed contained the following description, to-wit:

"To John Taylor's corner, thence along John Taylor's line to the Tarboro road."

This deed was made at the written requst of Wiley and Sarah A. Johnson. It did not embrace any part of the land in controversy, but embraced a part of the land conveyed to H. W. Miller, trustee, by deed dated December 23, 1855. Objection of plaintiff overruled. Exception.

The Defendant then proved by H. C. Johnson, the plaintiff, that "John Taylor's line" called for in said deed, was the line of the tract in controversy, which was then held by John R.

Taylor under a claim that it had been purchased by him from Wiley Johnson by verbal contract.

Deed of mortgage from John R. Taylor to Henry B. Jordan, dated 22d of May, 1858, for the land in controversy was then offered. Plaintiff objected. Objection overruled. Exception.

The defendant then offered an assignment by John R. Taylor, dated 29th July, 1859, of his equity of redemption in said land, to H. B. Jordan. Plaintiff objected. Objection overruled. Exception.

The defendant then offered in evidence, a deed from Henry B. Jordan to Joseph P. Prairie, dated the 19th day of December, 1872.

H. C. Johnson, one of the plaintiffs, testified in their behalf as to the kinship of the plaintiffs to Sarah Johnson, and further testified, that Sarah Johnson died in 1863, and Wiley Johnson in 1864, and that John R. Taylor had the land in controversy in possession from October, 1852, to December, 1872; that he obtained his possession from Wiley Johnson, husband of Sarah Johnson; that Wiley and Sarah Johnson were living on the land when Taylor went into possession; that the defendant went into possession after John R. Taylor left the land, and has held it ever since.

The defendant introduced John R. Taylor as a witness, who testified that he made an agreement with Wiley Johnson to buy the land in controversy, by a verbal contract; that he was to give him three hundred dollars for it; that he paid him one hundred and fifty dollars in cash, and gave him his note for the balance. That Wiley Johnson and his wife were living on the land at the time he made the contract with him for it; that Wiley Johnson did not tell him the land was held by his wife under a contract of purchase, and he never heard of any such contract with Mrs. Johnson; that his possession was held under his contract, and he held the possession for himself; that he cleared the land, fenced and cultivated it, and built a house on it.

The Court instructed the jury, that in no view of the evidence in this case could the plaintiffs or any of them recover in this action.

The jury found the first issue in favor of the defendant. There was judgment in his favor, from which plaintiffs appeal to the Supreme Court.

*Mr. E. C. Smith*, for the plaintiffs.
*Mr. D. G. Fowle*, for the defendant.

ASHE, J. (after stating the facts). There was no question raised in the case, as to the title being out of the State, and we must therefore consider that as conceded.

The defendant based his defence mainly upon two grounds: 1st. That neither Sarah Johnson, under whom the plaintiffs claim, nor Henry W. Miller, acquired any titled to the land purported to be conveyed to the latter, by the deed of Henry Mordecai, of date December 23rd, 1855, and the plaintiffs have no right to maintain this action ; and, 2nd. That if said deed did pass the title, the plaintiff's right of action is barred by the statute of limitations.

We are of the opinion that the grounds of defendant's defence are well taken, and are fatal to the plaintiff's right to recover.

The land in controversy was a small portion of a large tract of 409½ acres, conveyed by Henry Mordecai to Henry W. Miller, to the separate use of Sarah Johnson and her heirs. All that tract was conveyed to one George Taylor, by said Miller, with the written consent of Sarah Johnson: 1st. 325 acres on the 25th of December, 1855, and 2nd. 73 acres on the 11th of May, 1857, leaving the residue, consisting of ten or eleven acres, which is the land in controversy, and was claimed by John R. Taylor, by a verbal contract made with Wiley Johnson, some three years before the date of the deed of Mordecai to Miller. And to show that Sarah Johnson, after the execution of that deed, recognized and acquiesced in the contract made between her husband

and John R. Taylor, in the deed executed by H. W. Miller to George Taylor, with her written consent for the 73 acres, in describing the boundaries of that tract, there is a call "to John Taylor's corner, thence along John Taylor's line to the Tarboro road.". She no doubt knew that the land had been paid for by Taylor, and she had probably received the benefit of the price, and therefore did not wish to disturb his possession, and then her heirs, the plaintiffs, have acquiesced in his title for twenty years after her death, before bringing this action. The claim is inequitable, and it subserves the justice of the case, that the defendant is able to establish a defence that is sufficient to defeat the plaintiff's action.

It is in evidence, that at the time of the execution of the deed from Henry Mordecai to Henry W. Miller, John R. Taylor was, and had been for more than two years, in the actual adverse possession of the land, claiming it as his own.

The common law is in force in this State, and it is a general rule of that law, that a conveyance of land by a person against whom it was adversely held at the time of making it, is void, and the reason of the rule, according to Lord Coke, is for avoiding maintenance, suppression of right and stiring up of suits. *Coke on Littleton,* 214, and *Tyler on Ejectment,* 925.

The general rule of the common law, however, is to be taken with the qualification, that a deed taken for land, while another is in the adverse possession, is void only in relation to the person so in possession and those claiming under him. As to all the rest of the world, the deed is valid and passes the title. *Tyler on Ejectment,* 937. But this qualification does not affect the title of the defendant, for he claims under Taylor, the person in the adverse possession when the deed was executed.

It was to avoid this consequence of a deed executed while another was in adverse possession, that in the practice under the old system, it was common for the plaintiff to lay two demises in his declaration, the one in his own name, and another in that of the grantor.

But the plaintiffs contend that the rigid rule of the common law has been relaxed by the act of 1875, ch. 256. The Code, §177, which provides, "that an action may be maintained by a grantee of real estate in his own name, whenever he, or any grantor, or other person through whom he may claim title, notwithstanding the grant of such grantor or other conveyance be void by reason of the actual possession of a person claiming under a title adverse to that of such grantor or other person, at the time of the delivery of such grant or other conveyance."

But it is a general rule, in reference to statutes, that they are to be so construed as to have a prospective effect, and will not be permitted to affect past transactions, unless the Legislature has clearly and unequivocally expressed its intention to the contrary. Wood on Limitations, 29, and note 1. Whether this intention is so unequivocally expressed by the wording of this statute, it is unnecessary to decide. For conceding that the act does have a retrospective operation, it only gives the right to the grantee to sue in his own name, if the original grantor might have done so, and this raises the question, could the grantor, Henry Mordecai, or his heirs, could have maintained this action?

They certainly could not, for prior to the commencement of the action, Prairie had been in the actual possession of the land for more than seven years with color of title. On the 22nd day of May, 1858, John R. Taylor, who had been for several years in the actual adverse possession of the land, executed a deed of mortgage to Henry B. Jordan. Taylor then, as mortgagor, was concluded by his deed, and after its execution, his possession is by consent of the mortgagee, and in law, the possession of the mortgagee; *Williams* v. *Bennett*, 4 Ired., 122; Adams' Equity, p. 114. He is the tenant at sufferance of the mortgagee, and when in 1859 Taylor assigned his equity of redemption to H. B. Jordan, who entered thereafter in possession, his conveyance of the equity of redemption could not have the effect of changing their nature. And so when Jordan conveyed to Prairie the same land, by deed bearing date 19th of December, 1872, the same relation between

him and Prairie still subsisted. His possession having been once the possession of Jordan, it must continue, so long as he remains in possession, to be the possession of his alienee.

The defendant Prairie, then, and Jordan, under whom he claimed, had color of title and possession, more than seven years, prior to the commencement of the action, claiming it up to known and visible boundaries; for all the other portions of the land had been conveyed to George Taylor by two deeds, one of which called for a corner and line of the John Taylor tract, the land in controversy, and it would seem to follow as matter of course, that its boundaries must be circumscribed by the lines of one or both of those tracts, and the outside line of the whole tract conveyed by Henry Mordecai to Henry W. Miller.

The possession, under the color of title held by the defendant would have barred the action if brought by the heirs of Henry Mordecai, and if they could not have maintained the action, it follows that neither Henry Miller's heirs, nor the heirs of Sarah Johnson could have maintained it, for the statute only gives them the action in their own names, provided the grantor could have brought it.

Our opinion is, the plaintiff had no right to recover, and there is no error in the judgment of the Superior Court, which is therefore affirmed.

No error. Affirmed.